**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


Old Tyme Remedies, LLC,              )          Case No. 5:12 CV 03044
                                     )
                                     )
            Plaintiff,               )          JUDGE JOHN R. ADAMS
vs.                                  )
                                     )          [Docs. ## 131; 159; 172; 209; 214; 215;
Amish Origins, LLC, et al.,          )          220; 223; 228; 229; 238; 239; 241; 242;
                                     )          243; 244]
                                     )
            Defendants.              )          **MEMORANDUM OPINION**


**INTRODUCTION**

This action is before the Court on the Motion for Partial Summary Judgment (Doc. #209),

filed by Plaintiff, Olde Tyme Remedies, LLC ("Plaintiff"), the Motion for Summary Judgment

(Doc. #214) filed by Defendants G&G Sales, LLC, and Richard D. Greenwood (collectively the

"Greenwood Defendants"), and the Motion for Summary Judgment (Doc. #215) filed by

Defendants Amish Origins, LLC, Carol S. Doerr, Gerald J. Doerr, and Pro 10 Originals, LLC

(collectively the "Amish Origins Defendants").

Plaintiff Olde Tyme Remedies, LLC, seeks summary judgment on laches, statute of

limitations, and fair use defenses asserted by the Greenwood and Amish Origins defendants.  The

Greenwood Defendants seek summary judgment on all claims asserted by Plaintiff Olde Thyme

Remedies, LLC, against them and seek to be dismissed from the suit.  The Amish Origins

Defendants seek summary judgment dismissing all claims asserted against them, or in the alternative a finding that claims are barred by the doctrine of laches and monetary judgment is barred by principles of equity.

The Greenwood and Amish Origins Defendants have filed responses to the Plaintiff's motion for partial summary judgment (Docs. #220 and 223).  Plaintiff has replied to those responses (Docs. #238 and 239).  Plaintiff has filed responses (Docs. #228 and 229) to the Greenwood and Amish Origins Defendants' motions for summary judgment.  The Greenwood Defendants have replied to Plaintiff's response (Doc. #241).

The Amish Origins Defendants have filed a Motion to Strike in conjunction with their reply in support of their motion for summary judgment (Doc. #242).  The Amish Origins Motion to Strike requests that the Court find the material filed in support of Plaintiff's response in opposition to their motion for summary judgment is not compliant with the requirements of Civ. R. 56 and strike the same from the record.  Plaintiff has opposed the motion to strike (Doc. #243). The Amish Origins Defendants have replied in support of the motion (Doc. #244.)

The Court has reviewed the parties' pleadings; motions; oppositions; replies thereto; attached exhibits; and applicable law.  For the following reasons, the motions are DENIED.

## FACTS

The basic facts relative to the three motions for summary judgment are not in dispute. Plaintiff, Olde Tyme Remedies LLC, is the assignee of the United States Trademark Registration No. 3,845,3204 for "Unkers," registered on September 7, 2010.  Plaintiff explains that the Unker's mark is a fanciful designation based on a family member's inability to pronounce "uncle" as a child.  Under the Unker's mark Plaintiff has, since 1982, produced, or licensed the production of, mentholated salves, creams, sprays, and lip balm.  According to Plaintiff their

2

products are based on a salve a family member sold door to door to members of the Amish Community beginning in 1933.  Because the recipe for the salve was at some point published in a book, Plaintiff and Plaintiff's predecessors in interest in the business have not sought to patent and do not hold a patent for the formula.

Defendants Amish Origins LLC, Carol S. Doerr, Gerald J. Doerr, Jr., Pro 10 Originals LLC, and Richard D. Greenwood dba G&G Enterprises and G&G Sales LLC dba Amish Origins Medicated are engaged in the manufacture and sales of salves, creams, sprays and lip balm.  The Amish Origins Defendants are known to Plaintiff as they produced "Unker's" products for the prior trademark holder, Patrick Henry.  Patricia Pendleton, Plaintiff's current owner operator, is Patrick Henry's daughter.  The duration and nature of the production and licensing arrangement between Plaintiff's predecessor and the Amish Origins Defendants is not clear at this stage in litigation, however the end of the relationship is partially reflected in *Henry v. Pro Ten Originals*, *LLC*, 698 F.Supp 1279 (D.Wyo. 2010).

Plaintiff's Complaint alleges various infringements of the Unker's trademark, including unfair competition and false designation in interstate commerce under the Lanham Act and deceptive trade practices under Ohio law.  Plaintiff's First Amended Complaint alleges that Defendants have marketed Amish Origins products "as original Unkers products that have been rebranded". (See Complaint, ¶33.) Plaintiff further alleges that Defendants have represented that the Unkers product line was purchased by Pro 10 Originals or Amish Origins, and that the Amish Origins product line was at one time the "real" authorized Unkers product line. (See Complaint, ¶34.) Plaintiff further alleges in its amended complaint that "the Pro 10 Originals and Amish Origins Defendants …hold themselves out as the originators of the Unkers product line and unfairly compete with the Plaintiff, its licensees, distributors and retailers by utilizing the

Plaintiff's trademarks and making false and misleading representations to the public regarding the origins of their goods". (See Complaint, ¶35.) Finally, Plaintiff's Amended Complaint alleges that all of the Defendants "have infringed on Plaintiff's mark in interstate commerce by various acts, including the use of the mark in advertising representing that the Amish Origins product line is "formerly known as Unkers". (See Complaint, ¶40.)

## LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). A fact must be essential to the outcome of a lawsuit to be 'material.' *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be entered when a party fails to make a "showing sufficient to establish…an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23. "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

Summary judgment creates a burden-shifting framework.  See *Anderson*, 477 U.S. 250. The moving party has the initial burden of showing there is no genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  Specifically,

> "A party asserting that a fact cannot be or is genuinely disputed must support the asserting by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

4

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).

The burden then shifts to the nonmoving party to prove that there is an issue of material fact that can be tried. *Plant,* 212 F.3d at 934.  If this burden is not met, the moving party is then entitled to a judgment as a matter of law. *Bell*, 351 F.3d at 253.  In evaluating a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party may not simply rely on its pleadings; rather it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1996).

## ANALYSIS

Plaintiff and Defendants' cross-motions for summary judgment will be considered in the order filed, to the extent possible they are grouped according to subject matter.

**1.      Defenses : Laches and Fair Use**

Plaintiff seeks partial summary judgment foreclosing the Greenwood and Amish Origins Defendants ability to assert laches and fair use defenses.  Plaintiff's motion for partial summary judgment begins by referencing the prior trademark dispute involving the Amish Origins Defendants in the Federal District Court for the District of Wyoming which resulted in a permanent injunction.

To the extent that Plaintiff's claims "stem from a prior trademark dispute" and any argument in support of relief relies on the substance of the Wyoming court's judgment and permanent injunction to establish wrongful or actionable behavior, they would not be properly

before this court. (Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, Doc. #209-1, p. 1.) A District Court has broad powers to enforce its own injunctions and judgments, but that power is exercised at the court's discretion and within the limits of the court's jurisdiction.  18 U.S.C. § 401; *Tennessee Valley Authority v. Hill,* 437 U.S. 153 (1978). A District Court's jurisdiction does not extend to the injunctions or orders of Federal districts or state decisions.  *Id.; Kendall v. U.S. ex rel Stokes*, 37 U.S. 524 (1838).  A court "may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute."  *Wignet v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008), citing *Southern Cross Overseas Agencies, Inc., v. Wah Kong Shipping Group, Ltd.,*  181 F.3d 410 (3rd Cir. 1999).  This court may take notice of the fact that a prior lawsuit occurred and the practical result of that lawsuit – that the Amish Origins Defendants and to a lesser degree the Greenwood Defendants cannot deny knowledge of the existence of a trademark applicable to the use of "Unker's" in commerce – is not genuinely disputed in this matter.    This Court's analysis is limited to the extent that Plaintiff's claims rely on the Lanham Act as it would be applicable to any entity in the marketplace.

Because the Lanham Act does not include a statute of limitations, courts have "consistently used principles of laches as developed by courts of equity" resulting in a presumption that "an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985).  For Lanham Act claims "the analogous Ohio law is the two-year statute of limitations for injury for persons and personal property, Ohio Rev. Code § 2305.10." *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 963 (6th Cir. 1987).  The laches

period begins to run when a plaintiff has "actual or constructive" knowledge of the activity that allegedly violated the Lanham Act. *Laukus v. Rio Brands, Inc.*, 391 Fed.Appx. 416, 421 (6th Cir.2010). Laches is dissimilar from a statute of limitations in that it is not "a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced." *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). To successfully defend against trademark infringement claims, the party asserting the laches defense must show: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Laukus*, 391 Fed. Appx. at 420 (citing *Nartron Corp.*, 305 F.3d at 408).

Plaintiff acknowledges the two year statute of limitations, but seeks to establish that Defendants collective conduct is so egregious that principles of equity would negate the application of laches. The Greenwood and Amish Origins Defendants both point to documents produced in discovery and deposition transcripts that demonstrate that actual use of the protected mark on advertising banners was engaged in by third parties who were not under Defendants' direct control. Plaintiff relies on the fact that Defendants were aware of the Wyoming lawsuit as the basis for a finding that defendants conduct was egregious. Plaintiff contends that this knowledge means Defendants acted with unclean hands. In support of this argument Plaintiff primarily cites *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 1848, in which the United States District Court for the Southern District of Ohio relied on a Ninth Circuit Court of Appeals decision, *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) when evaluating a laches defense. The *Rocky Brands* court noted:

> the principle of unclean hands is not without its limits when applied to a claim of false advertising . . . [i]n a Lanham Act false advertising suit, a plaintiff cannot ordinarily show unclean hands, and thereby defeat laches, simply by alleging that the defendant made claims knowing that they were false . . . [a] plaintiff can

escape laches under the unclean hands doctrine only if the court is left with a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims.

*Rocky*, at 11.  The *Rocky* court found that the two examples of conduct identified by Red Wing: the use of a "Made in USA" label "in connection with" boots that were made overseas, and a response to a cease and desist letter, did not rise to the level of egregious conduct. *Id.*

At this stage in the matter, the conduct Plaintiff identifies as egregious appears to involve a distributor telling existing customers that he can no longer sell them a product under the name they are familiar with, but that he can offer a substitute from the same manufacturer under a different name.  While Plaintiffs have demonstrated that Defendants did not go out of their way to explain to customers why they could no longer supply "Unkers," they have not demonstrated that Defendants had any affirmative duty to do so.  It is true that Plaintiffs have produced material that, if believed, tends to suggest Defendants presentation of the Amish Origins product line omitted relevant details concerning litigation, the actual extent of any factual inaccuracy, or impermissible misrepresentation, has not been conclusively established by any party in this matter.  For these reasons the Greenwood and Amish Origins Defendants are not barred from asserting laches defenses, although it is not yet clear from the record which claims, if any, the defense may negate if they are successfully established.

"Fair use" appears in § 33 of the Lanham Act as a defense, and allows use of a protected mark that amounts to "a use…of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or service of such party…." 15 U.S.C. § 1115(b)(4); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003). To evaluate this defense a court considers of whether the mark was used: "(1) in its descriptive sense; and (2) in good faith." *ETW Corp.*, 332.  Plaintiff explicitly relies solely on the Wyoming injunction to contend

that the text of the injunction would preclude any finding that Amish Origins acted in good faith. (Plaintiff's Memorandum in Support of Partial Motion for Summary Judgment, (Doc # 209-1, p. 12 "Here, Defendants Gerald J. Doerr, Jr. and Pro 10 Originals, LLC were permanently enjoined from using 'the Unker's mark, or any of its variants, *in any sales, marketing or other activities* involving personal care prodicts.  Wy. Judgment 2. ECF No. 50-4." (emphasis sic.))  A finding in favor of Plaintiff on this issue would impermissibly require this Court to interpret and apply the language and substance of an injunction from another jurisdiction. Cf. 18 U.S.C. § 401 (a court has the power to enforce its own injunctions through sanctions).  To the extent that Plaintiff seeks to enforce the terms or bases of the Wyoming injunction, Plaintiff must seek relief in the District Court in Wyoming.  Fair use may continue to be an issue in this matter, and this finding does not prospectively prevent Plaintiff from combating any attempt to assert fair use on other factual or legal bases.

## 2. Trademark Infringement, Unfair Competition, False Designation of Origin, and Deceptive Trade Practices

Plaintiff's Complaint refers to and Defendants' motions for summary judgment address a variety of possible Lanham Act and Ohio Deceptive Trade Practices Act violations.  The Lanham Act applies to federally registered trademarks and imposes liability upon any person who, without the consent of the registrant, uses in commerce:

> any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 USC Section 1141(1)(a).  Under the Lanham Act, the necessary elements of trademark infringement are:

(1) Ownership and continuous use of a specific trademark;
(2) Secondary meaning if the mark is descriptive;
(3) A likelihood of confusion among customers resulting from a defendant's use of the mark.

*Homeowners Group Inc. v. Home Marketing Specialists*, 931 F.2d 1100, 105 (6th Cir. 1991).

The Act provides for a separate cause of action for false designation of origin against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. §1125(a)(1)(A).  Claims for false designation of origin require a claimant to show that (1) it uses a protectable mark in commerce, and (2) the defendant's use results in a likelihood of confusion. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005).

The showing required to prove a violation of Ohio's Deceptive Trade Practices Act (DTPA) mirrors the likelihood of confusion required of Lanham Act infringement claims. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 288 (6th Cir. 1997).  The Ohio Deceptive Trade Practices Act provides:

> a person engages in a deceptive trade practice when, in the course of the person's business, vocation or occupation, the person:
>
> (1) Causes the likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;
> (2) Represents that goods or services have sponsorship, approval or characteristics that they do not have; or
> (3) Represents that the goods or services are of a particular standard, quality or grade that they are not.

ORC §4165.02(a)(3), (7), (9).

10

The Amish Origins and Greenwood Defendants contend in their Motions for Summary Judgement that Plaintiff cannot establish use of the actual Unker's mark that is actionable under the Lanham Act.  Defendants collectively emphasize that the use of Unker's on advertising banners documented by Plaintiff was the result of third party actions and therefore is not attributable to Defendants.  Both motions rely extensively on blanket statements concerning Plaintiff's ability to prove its claims.  Defendants do not address the extent to which their communications with merchants and the public may have, intentionally or otherwise, created the impression that "Unker's" was no longer being produced and that Amish Origins offered the same product as an original producer.  Instead, Defendants emphasize what they perceive as Plaintiff's delay in filing suit and profit increases year on year during the period covered by the suit, as bars to recovery.

In response to Defendants' motions Plaintiff contends that what Defendants argue is impermissible delay in filing suit is in fact Plaintiff's recognition after prior litigation that there would be confusion in the market, followed by a period of monitoring, before a newspaper article alerted them to the possibility that Defendants were purposefully perpetuating and contributing to the confusion to an actionable degree.  In opposition to the summary judgment motions Plaintiff produced the initial statement it provided to customers concerning the Wyoming litigation, the customer confusion logs it began to produce to monitor the situation, the newspaper article that precipitated the lawsuit, deposition testimony from merchants who purchased product from the Greenwood Defendants, screenshots demonstrating that the Amish Origins defendants had registered unkerspainrelief.com and used the site to redirect internet traffic to their Amish Origins site, as well as material reflecting keyword based advertising by

11

Amish Origins that included "Unker's."  (Docs. ##228 and 229 and Exhibits; 243 and Pendleton Affidavit filed in support of 243.)

Viewing the record as a whole, and taking into consideration the fact that all reasonable inferences must be drawn in favor of the non-moving party, Plaintiff has established a genuine dispute as to the material facts.  *Matsushita Elec. Indus., supra.*  Plaintiff has demonstrated that the Greenwood Defendants may have maintained sales of Amish Origins products to their Ohio customers by representing that the product was formerly Unkers and produced by the original manufacturer of Unkers.  Similarly, Plaintiff has produced material that supports a conclusion, at this stage in the matter, that the Amish Origins Defendants may have used the protected mark in its online advertising to drive sales traffic to its website.  Plaintiff has also demonstrated that Amish Origins is using portions of the brand history claimed by Unker's.  It appears possible from the materials in this record that representations made by Amish Origins may have created or contributed to confusion concerning its relationship with Unkers.  Plaintiffs have further produced material that suggests at least a portion of the described conduct occurred within the two years immediately preceding the lawsuit.  Whether the actions of Defendants rise to the level of Lanham Act violations is not yet clear, but the material presented by Plaintiff is sufficient to establish that judgment as a matter of law is not yet merited. Accordingly, the Greenwood Defendants' and Amish Origins Defendants' Motions for Summary Judgment are denied.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment (Doc #209) is DENIED.  The Greenwood Defendants Motion for Summary Judgment is DENIED (Doc #214).  The Amish Origins Defendants Motion for Summary Judgment is DENIED (Doc #215).  The Amish Origins Defendants Motions for Sanctions and Supplemental Motion for

Sanctions are DENIED (Doc # 131 and 159).  The Amish Origins Defendants Motion to Strike is

DENIED (Doc. # 242).   Plaintiff's Motion for Leave to File Answer to Defendants' Second

Amended Counterclaim is GRANTED (Doc. # 172), Plaintiff shall file the Answer forthwith.

**IT IS SO ORDERED**.

_/s/   John R. Adams_
**UNITED STATES DISTRICT COURT JUDGE**
**NORTHERN DISTRICT OF OHIO**

Dated: March 31, 2015